United States District Court
for the
Southern District of Florida

| Isemithe Dorvilus, Plaintiff, | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 19-24085-Civ-Scola |
| Miami Gardens Apartments, LLC, | ) | |
| Defendant. | ) | |
| | ) | |

**Order on Motion to Dismiss**

Now before the Court is the Defendant Miami Gardens Apartments, LLC's motion to dismiss. For the reasons set forth below, the Court **denies** the Defendants' motion (**ECF No. 14**).

**1. Background**

The Plaintiff Ismethe Dorvilus brings claims under 42 U.S.C. § 1981, to recover compensation for her former employer's unlawful discrimination, retaliation, and hostile work environment. Dorvilus is a black Haitian-American woman, who currently resides in Miami-Dade County. Dorvilus worked first as a security guard for Miami Gardens Apartments, LLC ("Gardens Apartments") from August 3, 2017 until she was terminated in March 31, 2019.

There were two other security guards who worked for Gardens Apartments and both were Haitian-Americans. Moshe Eichler, Sam Horowitz, and Marty Follman, all Caucasian males, make up the management team of Gardens Apartments. (ECF No. 11 at ¶¶ 13, 15, 17.) Jessica Caceres, a Caucasian female, is the property manager of Gardens Apartments starting in June 2018. (*Id.* at ¶¶ 11, 24.)

Beginning with the time of her hiring in June 2018, Caceres made a number of discriminatory statements, including the following:

- "why are there only Haitians in the security department?" she asked the three Haitian-American security guards in a June 2018 meeting. (*Id.* at ¶ 26.)

- "I don't want to see you in my face anymore, give me the keys and leave. You can go home and never come back," she said to Dorvilus in an August 2018 meeting. (*Id.* at ¶ 27.)

- "You Security are so dumb" and "You don't know how to read and write. You Haitians have to go to school to learn how to write and

- speak English," she told the three security employees at an unspecified time. (*Id.* at ¶ 29.)
- "You security work for me, and I don't want you at the property," she told Dorvilus on December 8, 2018. (*Id.* at ¶ 30.)

Due to this continued harassment, Dorvilus complained about the racial discrimination and hostile work environment to Eichler, Horowitz, and Follman. (*Id.* at ¶ 33.) No one on the management team took any steps to address or remedy Dorvilus's complaints. (*Id.* at ¶ 35.)

Caceres began to retaliate against Dorvilus and the other two security guards for complaining about her to management. For example, she stated:

- "You Haitian people called corporate on me and think it will be a good idea for you, but all three of you will be fired soon! I tried to keep you at the job because your country has problems" on January 4, 2019. (*Id.* at ¶ 37.)
- "Don't complaint on someone who is higher than you" on January 4, 2019. (*Id.* at ¶ 37.)
- "Why didn't you call me and tell me this? You fucking ugly Haitian" on February 23, 2019 in response to learning that a resident had passed away. (*Id.* at ¶ 38.)

On March 8, 2019, Caceres told all three Haitian-American security guards that they will be terminated effective March 31, 2019. (*Id.* at ¶ 39.) A few days later, Follman told all three security guards that they had been doing a good job but that "they had to let them go." (*Id.* at ¶ 40.) In a March 14, 2019 meeting, Caceres told the three Haitian-American security guards, "you are all being fired because you called corporate on me" and "now that you are fired why don't you go all corporate now to complain about me." (*Id.* at ¶¶ 41, 43.) Dorvilus was terminated on March 31, 2019. (*Id.* at ¶ 44.)

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## 3. Discussion

The Defendant Gardens Apartments moves to dismiss the amended complaint because (1) Dorvilus's section 1981 claims are predicated on discrimination based on national origin, which cannot support a cause of action under Section 1981 and (2) Plaintiff's hostile work environment claim must be dismissed because the amended complaint lacks sufficient allegations to show that Dorvilus was subjected to "severe or pervasive" harassment. The Court will address each argument in turn.

### A. Dorvilus stated a claim for Section 1981 race discrimination.

Discrimination on the basis of national origin cannot support a discrimination claim under Section 1981. *See Tippie v. Spacelabs Medical, Inc.*, 180 Fed. App'x 51, *4 (11th Cir. 2006) ("by its very terms, § 1981 applies to claims of discrimination based on race, not national origin"); *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. March 23, 1981)[1] ("The Supreme Court has stated in dicta that section 1981 relates primarily to racial claims . . . and

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

this circuit has also stated that section 1981 does not encompass discrimination based solely on national origin") (citing *Olivares v. Martin*, 555 F.2d 1192, 1196 (5th Cir. 1977)).

The amended complaint repeatedly states that Dorvilus was discriminated against on account of her race and national origin by Gardens Apartments in violation of Section 1981. (ECF No 9 at ¶¶ 68, 81.) As explained above, Dorvilus cannot base her 1981 claims on Gardens Apartments' alleged national origin discrimination. The question, therefore, is whether Dorvilus stated a claim for section 1981 discrimination based on race.

The Court recognizes that there is sometimes overlap between national origin and race, and that "[t]he line between national origin discrimination and racial discrimination is an extremely difficult one to trace." *Bullard*, 640 F.2d at 634 (reversing the lower court's decision to grant summary judgment for the Defendant because of difficulties differentiating national origin discrimination and race discrimination). "In some contexts, national origin discrimination is so closely related to racial discrimination as to be indistinguishable." *Id.* However, courts in the Southern District of Florida have found that claims for national origin discrimination under section 1981 made by Haitians are not actionable where the undisputed facts demonstrate that the discrimination is based on the plaintiff's Haitian national origin and not her race. *See Joseph v. Florida Quality Truss Industries, Inc.*, 2006 WL 3519095, at *3 (S.D. Fla. Dec. 6, 2006) (Cooke, J.) (rejecting Joseph's argument that "his national origin claims are intertwined with race" and finding that his section 1981 claims are not actionable because the undisputed facts show he suffered only national origin discrimination); *Fadael v. Palm Beach County School District*, 2008 WL 4500700, at *1 n. 2 (S.D. Fla. Oct. 2, 2008) (Marra, J.) (the "allegations in the TAC make clear that Plaintiff's claim is based on his Haitian national origin, and not race" and therefore his claims are not cognizable under section 1981).

In short, the Court will not dismiss the section 1981 claims at this stage because the Plaintiff alleges that the discrimination is based at least partly on race. This argument may be raised again at summary judgment, but, at this stage, the case should not be dismissed.

**B. Dorvilus stated a claim for hostile work environment.**

To plead a hostile work environment under 42 U.S.C. § 1981, the plaintiff is required to allege that:

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create

a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010). "This fourth element of the hostile work environment test includes a subjective and objective component." *Mahone v. CSX Transportation, Inc.*, 652 Fed. App'x 820, 823 (11th Cir. 2016) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc)). In the objectivity inquiry, the Eleventh Circuit considers "the totality of the circumstances" including the following factors: "the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance." *Id.*

The amended complaint alleges at least six separate incidents over an eight-month period where Caceres made discriminatory remarks to the Plaintiff, and it also states that she would "routinely" order Dorvilus "to come to her office" and demand "that she give her the keys to the property and leave." (ECF No. 11 at ¶ 28.) The remarks and actions range in severity. Although none of the alleged harassment posed a physical threat to Dorvilus, some of it is threatening. For example, after Dorvilus complained about Caceres's discriminatory actions to management, Caceres told her that "all three of you will be fired soon" and "don't complaint on someone who is higher than you." (ECF No. 11 at ¶ 37.) Furthermore, "routinely" demanding that she give her the keys and that she leave the property significantly interferes with her job performance. Given the totality of the circumstances, the allegations are sufficient to withstand the motion to dismiss stage.

### 4. Conclusion

For the reasons set forth above, the Court **denies** the Defendants' motion to dismiss (**ECF No. 14**).

**Done and ordered** at Miami, Florida, on January 31, 2020.

_____
Robert N. Scola, Jr.
United States District Judge